Tilghman C. J.
In this case both parties appealed from the decree of the Orphans’ Court of Cumberland county, respecting certain fees, charged by Mr. Ramsey, clerk of the Orphans’ Court, on the proceedings for the sale of the real estate of general William Alexander, deceased.
On a petition for the division of the lands of Mr. Alexander, who died intestate, among his heirs, an inquisition was held, by which the estate was divided into twelve parts. There were twenty heirs, all of whom refused to take the estate, at the valuation made by the jury, in consequence of which, it was ordered by the Court to be sold, upon certain terms mentioned in the decree of sale, viz. one-third part of the purchase money to be paid down, and the remainder by *340 three instalments; and the purchasers were to give security for payment, by entering into a recognisance to the heirs of Alexander, with two good sureties. The estate was put up to sale, by the administrators of Alexander, who. reported to the Court, that they had sold part, and the residue remained unsold for want of buyers. The order of sale of the residue, was renewed from time to time, until the whole was sold ; and in taking security from the purchasers, the clerk of the Court thought himself obliged, according to the usual practice, to take a separate recognisance, for each instalment, to each of the twenty heirs. The consequence is, that he charges fees for 480 recognisances, at 25 cents each, amounting to 120 dollars. It would be doing injustice to the clerk, not to mention, that singular as it is, this appears to have been really the practice of that Court, although no case had occurred of sufficient importance, to induce the parties to appeal. As the fees on these recognisances constitute the principal object of dispute, I shall in the first place consider the legality of that charge. The Orphans’ Court decided it to be illegal.
In the fee bill of 28th March, 1814, sect. 10, the clerk of the Orphans’ Court is allowed, for “ all proceedings on inquisition on real estate, for each share into which the same shall be divided by the inquest, including order, confirmation, recognisances, recording, and copy, three dollars.” “ All proceedings for the sale of real estate, recording, and copy, four dollars.” If this sale be considered as part of the proceedings on the inquisition, on general Alexander's estate, then the clerk’s fees would be only three dollars on each share into which the estate was divided, viz. twelve shares, which would make the whole amount of fees thirty-six dollars. Or, if the recognisances are considered as part of the proceedings for the sale of the real estate, thenMhe whole fee would be four dollars, so that in neither case could the charge for 480 recognisances be supported. But Mr. Ramsey, whom I shall call the appellant, relies on a subsequent part of the section in which his fees are established, where we find.1 the following expressions: “ taking a recognisance, 25 Cents.” This-, the counsel for the appellant contend, is to be understood of recognisances taken from purchasers of land sold by order of the Court; and that such was the meaning of the law, they infer, because, in the former part *341 of the section, in which the fee is fixed, for all proceedings for the sale of real estate, recognisances are not expressly mentioned, although they had been mentioned immediately before, in the fee on inquisitions on real estate. This difference of expression, can only be accounted for, say they, by supposing that it was not intended to include recognisances in the general expressions, all proceedings for the sale of real estate. On examining this act of assembly, it will appear, that the legislature were anxious to establish a table of fees, as clear and explicit as possible. And certainly it is the duty of the Court to construe it, so as to second this laudable intention. An obscure fee bill, is a wide spread mischief. It will also appear, that in several instances, it was intended produce certainty, by avoiding a detail of fees, and giving one sum for a number of different services. In the present instance, such was manifestly the intention. The expressions, all proceedings on inquisitions on real estate, and all proceedings for the sale of real estate, must have been designed to include the whole, and not omit a part, the fees of which were to be fixed afterwards. Such a construction produces obscurity indeed, and nothing will justify it, but absolute necessity. If there were no cases in which recognisances could be taken, but on proceedings on inquisitions, and on sales of latid, then indeed, the construction contended for by the appellant, would be necessary, because, on any other construction, the fee of 25 cents for taking a recognisance, which is expressly given, must be rejected. But there are other cases in which recognisances may be taken. One, and a very common one, is, when the Orphans’ Court order an administrator to sell land for the payment of debts, there, they may direct the administrator to give security by a recognisance. And in the course of their extensive jurisdiction, there are no doubt many other cases in which that Court may take recognisances. But in cases like the present, where a sale is decreed, because the heirs refuse to take the intestate’s estate at the value fixed by the jury, I cannot think it was in the contemplation of the legislature, that the purchasers should enter into a recognisance, and my opinion is founded on this : the act of 2d April, 1804, which authorises the Orphans’ Court to decree a sale, expressly provides, that the purchaser shall take the land, “ liable to the payment of the purchase money, according to the terms prescribed by the *342 Court in the order of sale,” and “ that the said Court shall cause the proceeds of such sale to be distributed in such manner as according to law and justice may be properIt was unnecessary, therefore, to take a recognisance where the purchase money was secure without it. Neither do I think, that it was the intent of the law, that the purchaser should give separate bonds to each heir; but that the administrator should receive the purchase money, or the security for it, and account according to the order of the Court; this is what is meant, by the Court’s causing the proceeds of sale to be distributed, &c. And when the Court orders the administrator to receive the purchase money, they may at the same time order him to give security by recognisance, for the performance of his trust, and such recognisance would be part of the proceedings for the sale of real estate, in which the clerk’s compensation for the recognisance, would be included in the general fee of four dollars. I am therefore of opinion, that the Orphans’ Court was right in striking out of the clerk’s bill the charge of 120 dollars for recognisances. At the same time I must say, that I find no fault with the clerk for obeying the order, and pursuing the usual practice of the Court. He has had much trouble in this case, and the fees of 36 dollars allowed for the twelve shares into which the estate was divided, and four dollars for the sale, will be but a poor compensation. But so it will sometimes be, where one fee in the lump, is given for all services; and on the contrary, by such mode of charging, he will sometimes be a gainer.
2. The next disputed charge is 24 dollars, upon six sales. This charge cannot be supported. The whole was one proceeding for the sale of the estate, continued from time to time, till all was sold. The act of assembly allows a fee of four dollars for all the proceedings. This fee the Orphans’ Court allowed, and struck off the rest of the 24 dollars charged by the clerk. I am of opinion that this was right.
3. The next controverted charge is for sixteen advertisements of sale, at 25 cents each. The Court allowed the clerk for twelve, which were written by their order, but struck out the other four which were inserted in the newspapers. This also, in my opinion, was right. The act of assembly gives, “ for writing advertisements directed by the Orphans’ Court, for sale of intestate’s land, 25 cents each.” As for. the ad *343 vertisements in the newspaper, the printer might charge them to the administrator, who would have an allowance for them in the settlement of his account. Indeed the writing of vertisements would have been no part of the clerk’s business unless it had been expressly mentioned in the act. It was no part of the proceedings in Court, and might as well have been done by the administrator. And it was because it was not properly a part of the proceedings in Court, that it was not included in the fee of four dollars allowed for all the proceedings, but compensated by an extra fee of 25 cents,
4. The last object of dispute, is a charge of $125 for recording six drafts. The Orphans’ Court disallowed it. The fee of four dollars for all the proceedings for the sale of real estate, recording, and copy, seems to include the recording of the draft, where a draft is made part of the proceedings, by the return of the administrator, in his description of the lands sold. But it is not necessarily a part; because the land may be described by boundaries without a draft; and even where it is made a part by express reference, the copy of a draft is so different from other parts of the record which are in writing, that the legislature probably were of opinion, that it deserved an extra fee. Be that as it may, the fee is expressly given, and I know not how to satisfy the words of the law without allowing this fee, in cases on inquisition, and for the sale of real estates. These words must not be rejected, and I am therefore of opinion, that the appellant was entitled to his fees of 25 cents on each draft. It was contended, by one of the counsel for the appellant, that although there was a sale in this case, yet within the true intent of the act of assembly, it was a proceeding on an inquisition, and not a proceeding/or the sale of real estate; and there is not only ingenuity, but considerable force in this distinction; because, in the commencement of the proceedings a sale was not the object, but a division of the estate, and the sale took place only in consequence of the refusal of the heirs to take the different shares, at the valuation of the inquest; and what adds weight to the argument is, that the clerk is allowed a compensation for all the services to which he would have been subject, if the heirs had accepted the shares, viz. taking their recognisances, &c. so that by allowing the full fee for all the proceedings which might have been had if the heirs had accepted the land, and also the fee of *344 four dollars for the sale, there seems something like a double allowance. Nevertheless, I incline to a more liberal construction, in which I think myself warranted, because whatever might have been the object in the beginning, the proceedings did eventuate in a sale of the land, and this on the petition of one of the heirs ; so that there was in fact a proceeding for the sale of real estate. Upon the whole of this case, I am of opinion that there is no error, except as concerns the fees charged for recording the drafts. In that respect, therefore, the decree should be reversed, and the charge of the appellant allowed; but as to all the rest, it should be affirmed.
Gibson J.
A statute imposing costs where none existed before, is to be taken strictly ; because costs are not only an indemnification to the successful party, but are also in the nature of a penalty on the party failing in the cause. But a statute giving fees to an officer, is to be construed differently ; fees not being imposed as a penalty, but given as a compensation for services rendered. Fees and costs therefore, being es-sf :■ rially different in their nature, the fee bill must be interpreted by the ordinary rules of construction. The legislature beyond doubt, intended to establish a fee bill clear of ambiguity, but it is also clear beyond doubt they have not done so: nor do I see how our adhering to the notion of a lumping charge in every case where the words will admit of it, can have the effect of curing an ambiguity which arises from want of clearness in the expression of the legislative intention; for in ascertaining what that intention is, lies the whole difficulty. In some cases a lumping charge is established bythe express words of the act, but in others the items are particularly specified, and these are by far the most numerous. It does not appear, therefore, that the legislature intended to reduce the number of items into the subject of a general charge, where they could be conveniently separated. In fact nothing conduces so much to certainty, as the provision of a specific compensation for each particular item of service ; and if this could be done in every case,- doubt would be wholly excluded. The counsel of the appellee contend, that under the tenth section of the act, the appellant is entitled to but three dollars for each share into which the estate was divided j and this they agree he is to have, but contend it *345 is in full compensation for all his services. I am of opinion, however, notwithstanding the concurrence of the counsel on both sides, as to the propriety of this item, that under the clause of the section relied on, the officer can in this case claim nothing. The words are, that the clerk shall receive the specified fee for “ all proceedings on inquisitions on real estate, for each share into which the same shall be divided by the inquest, including order, confirmation, recognisances, recording, and copy.” Then immediately follows a clause providing a fee for the services of the clerk; when the estate, being rejected by the heirs, comes to be sold. I think it clear, therefore, the fee under the clause in question, was intended to compensate the officer for services he has to render, only when the estate is taken at the valuation. The word “ including,” was designed to particularise the exact services for which the compensation was to be given, and although there are other services necessarily incident to this proceeding besides those enumerated, these, unless where specifically provided for by oth,er clauses of the section, are to be rendered gratis. It never could have been the intention of the legislature, that fees should be received, when, as in this case, the appropriate services were not actually rendered. The act contemplates the alternative of the estate being taken, wholly Or in part, at the valuation, or of its being rejected. If taken, the services of entering the order and confirmation, taking recognisances to the other heirs, recording the proceedings, and making a copy arise to be performed, and become a fair subject of charge. But if rejected, entirely, or in part, another state of things, as to the part rejected, takes place, and a different compensation is substituted by the succeeding clause, adapted to the nature of the services, which he in that event, has necessarily to perform. When the estate is rejected, there is no further proceeding on the inquisition, the sole intent of which is to afford the children successively an opportunity of taking the estate, undivided, or by purparts, at a fair price ; and having performed its office without effect, there is an end of it, and another, and a distinct, proceeding, a sale of the property for what it will bring, takes place, with which the inquisition has nothing to do, except that recourse to it must have been previously had, and so far it may be considered a preliminary proceeding. In fact, the inquisition can in no wise *346 conduce to the sale, except that where the property may bring a better price by being sold in parcels, it may be con- . venient to follow the division established by the inquest; but this the Court is not bound to do. Then, although it is admitted by the counsel of the appellee, that this item of three dollars on each purpart is a proper charge, I cannot assent to its being allowed ; it being given by the fee bill, as I conceive, for services to be rendered only where the estate is actually taken at the valuation. The word “ including,” was intended to mark the extent of the words “ all services,” and, although badly selected for that purpose, to designate the very services that were to be the subject of. compensation under this clause : these were not rendered, and of course the officer cannot charge for them.
We then come to a distinct matter; the sale of the property. The whole being refused by the heirs, it was separately sold in twelve parcels, and the appellant charged four dollars on each, or at least on those that had been sold when his bill was exhibited to be taxed. This charge is resisted in toto. The act gives four dollars for “ all proceedings for the sale of real estate, recording, and copy.” I cannot assent to the notion of the counsel, that this is to be restrained to sales by administrators for payment of debts, and for the support and education of minor children ; for if it were, the officer in a case like this, would get nothing at all, but what was specifically provided for other parts of his duty. But why restrain it ? A sale after rejection by the heirs, is as much .within the letter and reason of the clause, as that to which it is said to be exclusively applicable. It is said, however, that a multiplied fee being expressly given by the preceding clause for each purpart, where the estate is taken at the valuation, and a similar provision being omitted where a sale is provided for, it is hence to be inferred, the intention was, not to give a distinct fee for each sale, but only one fee for the whole of the property, whether sold in parcels or not. This part of the case is not entirely without difficulty ; but I incliné to allow a separate fee, for each share sold. Although the two clauses immediately follow each other, it is obvious they are distinct provisions for very different cases. The sale has no connection with, or similarity to the proceedings on the inquisition, and whát might be a very adequate provision for the one case, might be very unfit and *347 improper for the other. The estate when divided, must be taken, if at all, according to the purparts returned, by the inquest, and there must be an order and confirmation, a set of recognisances, and a record and copy, as to each: it is therefore very proper, the officer should have a distinct fee for each, to compensate him for his duties thus multiplied. But where the estate has been rejected, although divided by the inquest, the Court may sell it in bulk, in which case the clerk will have but one set of duties to perform ; for which, to give him separate fees according to the number of shares into which the estate had been divided, would be manifestly unjust: and this I take to be the reason of the difference between the clause providing for a taking at the valuation, and that providing for a sale. There is, in fact, no law expressly authorising a sale by parcels, but the Court must necessarily have the power: otherwise, where very large estates would have to be sold, bidders would not be found, and the property would be sacrificed. But where the Court do not sell by parcels, they are not necessarily bound to follow the division made by the inquest, although it is usually convenient to do so, but may sell by any other division they may think proper. It is plain, therefore, the division returned by the inquest, has nothing to do with the manner of conducting the sale, and to have regulated the fees of the sale (which is a distinct matter,) by that division, would have been an absurdity. Hence, I think it clear, no inference can be drawn from the omission, in the clause governing the sale, to provide a separate fee for each share returned by the inquest, that it was the intention of the legislature, that a separate fee should not be charged on each sale actually made. There is nothing in the letter of the law, that militates against my construction. Each sale is a distinct proceeding, and has . its appropriate duties, which the officer is bound to perform, and in proportion to the number of sales are those duties multiplied. I think it, therefore, a fair and reasonable construction, to allow him a fee for each sale, it being his only compensation for the recording and copy, especially as, for the other parts of his duty incident to the sale, he is to get no- . thing, unless where they are specially provided for by some other clause. Were the construction otherwise, the officer would, in almost every case, be inadequately rewarded. In the case 9f the Bingham- estate, mentioned by the counsel, *348 which consists in a great measure of wild lands, ten volumes would not contain the proceedings, if it were sold by separate tracts ; and it never could be the intention of the legislature, that the clerk should in such case, receive but four dollars.
The appellant charges for recognisances given by the purchasers to secure to the heirs their respective .portions of the purchase money. This is resisted on the ground, that the Compensation allowed by either, or both of the clauses already spoken of, is expressed to be in full of all services rendered. Where the estate is taken at the valuation, I admit the recognisances cannot be separately charged, for they are expressly included; but where a sale takes place, the act is Silent. The counsel of the appellee rely on the special wording of the clause which gives a fee for “ all proceedings for the sale of real estate, recording and copy.” The sense of doubtful expressions is to be ascertained from a view of the whole act, and a comparison of all its parts taken together. The words “ all services,” which are stronger than “ all proceedings,” occur in other parts of the law where their meaning cannot be mistaken. Thus in the seventh section, a fee is given to the prothonotary for all services to be rendered at the first Court, including entering appearance, pleas, and special bailyet there are other services which may be, and usually are rendered at the first Court, for which fees are specially given, such as commissions and rules to take depositions, rules of reference under the compulsory arbitration act, the appointment of arbitrators, and a vast variety of other matters. For these, it cannot be pretended the officer cannot charge, if they are rendered at the first Court, for he would be in the same situation if they were rendered at any succeeding Court, as a fee of twenty five cents is given for “ all services at every subsequent Court previous to trial,” and one dollar for all services rendered, “ in, about, and during the trial.” If the words « all services,” were intended to exclude those rendered in term-time, there are many parts of the fee bill making specific allowances for services that cannot be performed in vacation, that would be rendered nugatory. So the ninth section, Which regulates fees in the Supreme Court when exercising appellate jurisdiction, gives afee for u all services rendered in and, about any cause from an inferior Court until judg *349 ¡went.” If this were taken strictly, it would exclude fees for all motions and rules, subpoenas, putting on the issue list, attachments, and in fact, every other matter for which fees are specially allowed. The rule is, however, that every part of a statute is to have effect where it is practicable. Now if the legislature have in other parts of the act, used the same, or a stronger expression in a sense different from its most obvious meaning, how can we say it was not used in the same sense in the section immediately under consideration ? The real meaning and intention is the object to be attained by the present inquiry ; and if one meaning is affixed to a doubtful expression in particular parts of the act, how can we say another shall be given, when, under like circumstances, the same expressions occur again ? Even where a particular construction results from necessity, it evinces what the legislature took to be the abstract meaning of the expression used, and fixes the construction where the same expression again occurs under different circumstances. The words “ all proceedings,” in the clause immediately under consideration, may well mean, “ in every proceeding.” In the preceding clause, the same words occur, with an explanation of their meaning; that is, all proceedings, including (or that are included in) the.order, confirmation, recognisances, and copy. These words therefore, do not exclude other services incidental to the proceeding, for which fees are specially provided by other clauses of the act. The four dollars are given for the recording and copy only, which i s the most troublesome part of the duty. A fee for taking a recognisance, is given in general terms ; and although recognisances may be taken in other cases, I see no reason to barely satisfy the words of the law, by extending the provision to such cases only, when the letter and spirit of the act, equally embrace the case under consideration. The number of recognisances charged, is unusually great, and if it appeared this was the result of management on the part of the officer to enhance his fees, I would be for disallowing the charge altogether; but it is not alleged, at least there is no evidence, that he departed from the usual course of the Court, and with this, my recollection of the practice in that county coincides. The practice, however, is an extremely bad one, and should be changed. A separate recognisance need not be taken for each instalment of the purchase money; and as the sale is to be made by *350 the executors or administrators under the direction of the Court, I see no reason why a single recognisance, or, (as , there is a lien independent of the form of the security) a bond from each purchaser should not be taken to the executor or administrator, in which case, the money, when recovered, would be distributed by the Orphans’ Court as in other cases.
Beside the foregoing, there are two items, for recording draughts, and writing advertisements, that depend on the reasons that govern, with respect to the propriety of charging for recognisances. These, it is said, are only applicable to sales for payment of debts, and the maintenance of minor children. I can discover no reason to restrict the allowance of these items, to cases of that kind. The words are general, and the reason equally holds in all sales by the Orphans’ Court. As to the advertisements, it is said, the Court is required to direct them on a sale for payment of debts, and not in a case of this kind; and that the legislature, therefore, had it not in view. But at the passage of the act, it was the practice, to order advertisements in all cases ; and we must suppose, the law was made with reference to the practice, as it existed, without regard to whether it had been established by positive law, or by the Courts themselves, for purposes of justice and convenience. The practice is a good one, and beneficial to the parties in interest, and the officer, therefore, ought not to be deprived of his compensation, if the words of the law will admit of the charge. But only the number directed by the Court can be allowed, as the law is express on that head.
I am of opinion, that the appellant be allowed four dollars on each sale: that he be allowed to charge for the number of recognisances taken, for the recording of the draught, and for twelve notices, and that the charge of three dollars on each purpart into which the estate was divided by the inquest, be disallowed.
Duncan J. gave no opinion, having been counsel in the cause.