## Montgomery *against* Cook.

A person for whose use a suit is brought, need show no right in himself; all that is necessary, is to show the legal plaintiff's right to recover.

A. S. devised the one undivided third part of a tract of land to his daughter S., and in the event of her having no issue at his death, then he devised the same to two other daughters E. and R., to be equally divided between them, "they paying her, the said S, in lieu thereof, the sum of 800 dollars, equally between them, the said E. and R., only that the said R. should pay of this sum 800 dollars, the amount of a note she held on him, (the said testator) more than her sister the said E., and that the said 800 dollars should be paid by them in four equal payments, &c." R. and E. took possession of the devise, and made partition between themselves. *Held*, that an action could not be maintained by S. against the devisees jointly, to recover the legacy payable out of the land, she having had no issue at the death of the testator.

ERROR to the common pleas of *Cumberland* county.

Action on the case for a legacy. Thomas Cook and Sarah his wife, for the use of Alexander M'Elroy, against James Montgomery, Esq., and Elizabeth his wife, David Brandt alienee of David Greer and Rachael his wife, with notice to Joseph M'Kee, and Moses Scroggs, executors of Alexander Scroggs, deceased.

The facts recited in the plaintiffs' declaration, are those which were given in evidence and upon which the questions decided arose; except that no evidence was given of any right in Alexander M'Elroy.

" Cumberland county, to wit:—James Montgomery of the said county, Esq., and Elizabeth his wife, and David Brandt alienee of David Greer and Rachael his wife, of the said county yeoman, with notice to Joseph M'Kee, and Moses Scroggs, executors of the last will and testament of Alexander Scroggs deceased, were summoned to answer Thomas Cook and Sarah his wife, for the use of Alexander M'Elroy, of a plea that they render unto them 400 dollars, which from them they unjustly detain, &c. Whereupon, the said plaintiffs say, that whereas, the said Alexander Scroggs, late of the said county deceased, was in his lifetime, to wit, on the 12th of September 1825, seised in his demesne as of fee, in and of a certain messuage and plantation, or tract of land, in and on which he dwelt with the appurtenances, situated in the said county, containing two hundred and fifty-six acres and sixty perches and allowance, and being so thereof seised, the same day and year, at

[Montgomery v. Cook.]

the said county, made his last will and testament in writing, under his hand and seal, and thereby devised to his wife Mary, part thereof in fee simple, that is to say, the house, barn and stabling, then in the tenure of William Richie, on the west side of the Big Spring, and fifty acres of the said plantation, to be laid off on the southwest end of the same plantation, and by the same will, he, the said testator, devised the one undivided third part of the remainder of the said plantation to his daughter, the said Sarah, then intermarried with the said Thomas Cook, to her, her heirs and assigns forever. But in case his daughter Sarah should have no heir of her body at the decease of the said testator, he directed, that the same undivided third part, of the said remainder, of the said plantation so devised to the said Sarah, should go to her two sisters, the said Elizabeth, then intermarried with the said James Montgomery, and the said Rachael, then intermarried with the said David Greer, they paying to her the said Sarah, in lieu thereof, the sum of 800 dollars, equally between them, the said Elizabeth, and the said Rachael, only that the said Rachael should pay of this sum of 800 dollars, the amount of a note she held on him, (the said testator) more than her sister the said Elizabeth, and that the said 800 dollars should be paid by them in four equal payments of 200 dollars each, to the said Sarah, each of which payments of 200 dollars to be made every eighteen months, and that the first payment should be made one year after the decease of him, the said Alexander Scroggs, and of his said will, therein appointed the said Joseph M'Kee and Moses Scroggs to be executors, and afterwards to wit, the 28th of April 1826, died, so seised of the said devised premises and plantation aforesaid, and the said Joseph M'Kee and Moses Scroggs, afterwards to wit, at the said county on the 12th of May 1826, accepted, and took upon themselves the said trust of executors, and caused the said will then and there to be proved and approved—and the said plaintiffs aver, that the said Sarah, wife of the said Thomas Cook had no heir of her body at the time of the decease of the testator, nor at any time afterwards; and that the said James Montgomery and Elizabeth his wife in her right, and the said David Greer and Rachael his wife in her right, assented to said devise made to them as aforesaid, and entered into the possession of the said devised one undivided third part of the plantation aforesaid, and that the said James Montgomery and Elizabeth his wife, and the said David Greer and Rachael his wife, at the said county, the 31st of December 1828, by their deed of partition of that date, in due form of law executed and acknowledged, among other things, made partition between them of the aforesaid devised premises, and the said David Greer and Rachael his wife, afterwards to wit, at the county aforesaid, the said 31st of December 1828, by their deed of the same date, in due form of law executed and acknowledged, conveyed and aliened to the said David Brandt, his heirs and assigns, the share and part

assigned and allotted to them in the right of the said Rachael, in and by the said deed of partition; and the said plaintiffs further aver, that 200 dollars of the second payment of the said 800 dollars was due to them, on the 28th of October 1828, and that 200 dollars, the third payment of the said 800 dollars was due to them, on the 28th of April 1830, and by reason of the premises, the said James Montgomery and Elizabeth his wife, and the said David Brandt, alienee of the said David Greer and Rachael his wife, became chargeable to the said Thomas Cook and Sarah his wife, to pay them for the use of the said Alexander M'Elroy out of the said devised premises, the said two payments of 200 each, according· to the devise aforesaid, and the said James Montgomery and Elizabeth his wife, and the said David Brandt, still hold and occupy the premises devised as aforesaid, yet neither the said James Montgomery and Elizabeth his wife, nor the said David Greer and Rachael his wife, before their deed of conveyance to the said David Brandt, nor the said David Brandt since the same deed of conveyance to him, have paid the same two payments of 200 hundred dollars each, devised as aforesaid, or any part thereof; although the times for the payment thereof are long since past, and although often requested so to do, but the same unjustly detain. To the damage of the said plaintiff, 800 dollars, and therefore they bring suit."

The defendant's counsel requested the court to charge the jury upon the following points:

That the suit having been originally brought in the name of Cook and wife, for the use of M'Elroy, and the said M'Elroy having failed to give evidence of any right in him to the subject matter for which suit is brought, the plaintiff cannot recover.

That if the jury believe that under the will of Alexander Scroggs, his two daughters, Elizabeth and Rachel, were bound to pay different amounts out of the land devised to them; that after the death of the testator they made partition of the land so devised, and took separate possession, and held their respective parts in severalty, and that Greer and wife conveyed their separate part to Brandt, one of the defendants, who held his share in severalty, and that of all this, the plaintiff had notice before suit brought, he cannot recover.

The court answered both these points in the negative, and charged the jury that the plaintiff was entitled to recover. Verdict and judgment for 950 dollars.

*Biddle* and *Watts,* for plaintiffs in error, said, on the first point, that he for whose use a suit is brought, is for every purpose considered the plaintiff, so that the legal party, whose name is used only *pro forma,* is not even liable for costs to the defendants, if the action fails; it would, therefore, seem to follow, that he alone to whom the defendant could look for costs, should not be permitted to recover without the exhibition of right in himself.

[Montgomery v. Cook.]

But the counsel relied mainly upon their second point: that the action could not be supported against the defendants jointly. It is clear, from the terms of the will, that the liabilities of the respective devisees are for different amounts; and it is equally clear, that the testator did not design to create a liability of one devisee for the other. The case of M'Lanahan *v.* M'Lanahan, 2 *Penns. Rep.* 279, settles the principle, that the liability is apportioned among the devisees, according to their possession of the land charged. The effect of a partition of land is not only to sever the possession, but to divest the tenants of all joint responsibility respecting their possession. Clark *v.* Bavington.

But why compel the parties to resort to the circuity of action consequent upon a recovery from the defendants jointly? If the property of him who has to pay least, is appropriated to the payment of the legacy, he must resort by action to the other. However willing he may be to pay his own, his property must be sold, because he cannot pay the amount due by the other devisee.

*Dever* and *Williamson*, for defendants in error, contended, that the will charged the land with the payment of the whole legacy, and that in as much as the plaintiff only sought to recover a judgment *de terris*, it was a proceeding *in rem*, in accordance with the terms of the will. The plaintiff was not bound by the amicable partition between the devisees, for perhaps, it might have been such a division, as that one part would not pay the amount charged upon it. The action could only be against the devisees jointly. They cited 2 *Saund.* 7, *notes* 4, 9, 10; 16 *Serg. & Rawle* 432; 20 *Johns.* 106.

The opinion of the Court was delivered by

KENNEDY, J.—The first point made by the plaintiffs in error, who were the defendants below, and submitted by their counsel to the court for their advice and direction thereon to the jury, we think was rightly answered. Cook and wife being still alive, the suit could only be maintained in their names; and notwithstanding it was stated on the record to have been brought for the use of Alexander M'Elroy, it is clear, that under the state of the pleadings in the cause, it was unnecessary to prove that he had any interest in, or claim to the subject matter in controversy. It was all sufficient to show that Cook and wife had a good cause of action, and that they were entitled to recover.

In the answer, however, of the court, to the second point, submitted on the part of the plaintiffs in error, we think there is error. According to the tenor of the will, we are inclined to the opinion that the testator only intended to charge his daughters, Elizabeth and Rachael, severally, with their respective proportions of the 800 dollars, which he directed they should pay to their sister, Sarah, one of the plaintiffs below. By that part of the will, out of which

the claim arises here, the testator devises one undivided third part of the remainder of a plantation, therein previously described, and in part disposed of, to his daughter Sarah, then intermarried with Thomas Cook, the other plaintiff below, in fee; but in case she should have no issue living at the death of the testator, he then gives the said undivided third part of the said remainder of the said plantation to her two sisters, the said Elizabeth, then intermarried with James Montgomery, and the said Rachael, then intermarried with David Greer, " they paying to her, the said Sarah, in lieu thereof, the sum of 800 dollars, *equally between them,* the said Elizabeth and the said Rachael, *only* that the said Rachael shall pay of this sum of 800 dollars, the *amount of a note,* she holds on me, (amounting as is said, to 163 dollars, or thereabouts,) *more* than her sister, the said Elizabeth, and that the said 800 dollars shall be paid by them in four equal payments, of 200 dollars each, to the said Sarah; each of which payments, of 200 dollars, to be made every eighteen months; and the first payment shall be made one year after my decease."

Sarah having no issue at the death of the testator, Elizabeth and Rachael, by their respective husbands, thereupon took possession of the third part of the remainder of the plantation, under the will. Rachael and her husband, David Greer, afterwards, sold and conveyed their interest and estate therein, to David Brandt, against whom this action was instituted, in the court below, conjointly with Elizabeth and her husband, James Montgomery, by Sarah and her husband, to recover 400 dollars, of the 800 dollars, being the second and third instalments thereof.

Now it is clear, from the will, that the testator did not intend that the 800 dollars should be wholly paid by either Elizabeth or Rachael; nor yet by them either jointly or severally in equal portions; for he has expressly directed, that Rachael shall pay the amount of a note she held against him, that is, 163 dollars more than Elizabeth; thus making Elizabeth's proportion of each instalment, 79 dollars 37½ cents, and Rachael's 120 dollars 62½ cents. But it is argued that the whole 800 dollars are charged by the testator, *against them jointly,* according to the express terms of the will, which are, " that the said 800 dollars shall be paid *by them* in four equal payments, of 200 dollars each, to the said Sarah." And it is contended, that the previous clause, " *they* paying to her, the said Sarah, in lieu thereof, the *sum of* 800 *dollars, equally,* between them, the said Elizabeth and the said Rachael, *only* that the said Rachael shall pay *of this sum of* 800 *dollars,* the *amount of a note,* she holds on me, *more* than her sister Elizabeth," was introduced, merely to establish the proportion that each should contribute, when they should come to settle and adjust the payment of the whole sum between themselves, and not to limit and apportion the sum that Sarah should have a right to demand from each of them. It is material here, to know and bear in mind, that

[Montgomery v. Cook.]

Elizabeth and Rachael took, if not by the terms of the will itself, at least by the act of assembly, of 1812, " concerning joint tenancy," a tenancy in common in the third of the remainder of the plantation devised to them, upon which the 800 dollars were to be paid. Each acquired, thereby, a separate estate of freehold in the land, for which Rachael was to pay 163 dollars more than Elizabeth. Now, if the testator intended to charge Elizabeth and Rachael, jointly, to Sarah, with the whole of the 800 dollars, and to make the interest of each in the land liable, not only for her proportion thereof, but for the whole amount, to Sarah, some reasonable motive for doing so ought to be discoverable. He, no doubt, intended that Sarah should be paid the 800 dollars, at all events; and that it should be made perfectly secure to her. But was it necessary, in order to effect this, that the testator should charge the estate of each of the devisees in the land with the whole amount. Had the right of survivorship existed between them, there might then have been some reason for doing so; but as this was and could not be the case, it can and is not pretended, that the separate estate or interest of each in the land, was not an ample security for the payment of her proportion of the 800 dollars, in any event that could occur. Why, then, should the testator embarrass or incumber Elizabeth with the payment of Rachael's proportion of the whole sum of money, which exceeded, by 163 dollars, what he required her to pay for her interest in the land? Or why put it in the power of Sarah or her husband, unnecessarily to sell and sacrifice Elizabeth's interest in the land, on account of the delinquency of Rachael or her husband, while Rachael's estate remained amply sufficient to satisfy and pay her portion of the money. To suppose that the testator intended thus to place Elizabeth at the mercy of Sarah or her husband, without the least apparent reason for it, would seem to be contrary to those feelings of equal kindness and favour, which parents generally entertain for their children and totally incompatible with those discovered by the testator in this respect, throughout the whole of his will. He knew his daughters were all married, and that though they would never be likely to act either unkindly or unfairly towards each other, yet he most probably had seen enough of the world, to know that it might not always be the case with their husbands, who were to become the masters of their rights, and to have the charge and management of their estates. It would, therefore, seem to be unreasonable to give a construction to the will that would render Elizabeth and Rachael, or their respective estates liable to pay money for each other, that might again produce suits between them, when he had given to each a fund much more than sufficient to enable her to pay all that he required of her, unless the will were couched in such terms as to leave no doubt upon the mind, but that such was the real intention of the testator. We, however, think that a different intention may be very fairly collected from the face of the

will; and that the testator thereby intended to make Elizabeth and Rachael, each, liable only to pay her proportion of the 800 dollars, and that their respective interests in the land devised to them should be bound for that and no more. If this be not the true construction of the will, then it may be a question, whether Elizabeth could have elected to take her interest in the land, under the will, without the consent of Rachael, who might have refused to join in taking it. And is it not certain that Elizabeth, at most, could only in such case, have taken and held her interest, by paying the whole amount of the 800 dollars; without having it in her . power to have contribution from Rachael? It is very difficult to believe that this could have been the design of the testator. So far also as the policy of the law is concerned here, it would seem to be in favour of the construction, which we think ought to be given to the bequest in question; as it will leave each liable only for the payment of her own proportion, without jeoparding or prejudicing the rights of Sarah, in the least degree, and prevent circuity of action, which, under a different construction, might become necessary, in order to obtain contribution by one, who had been compelled to pay more than her due proportion from the other.

This suit, then being brought against Elizabeth and her husband, jointly, with David Brandt, the alienee of Rachael and her husband, cannot be sustained.

Judgment reversed.